**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CATHERINE M. DAVIAU,**

                            **Plaintiff,**

     vs.                                                    09-CV-0870
                                                                  (MAD)

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

Catherine M. Daviau
6 Leard Road
New Hartford, New York 13413
*Plaintiff Pro Se*

Social Security Administration           Jennifer S. McMahon, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

     Plaintiff Catherine Daviau brings the above-captioned action pursuant to 42 U.S.C. § 205(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's decision that she is not entitled to a waiver of recovery of overpayment of disability insurance benefits.

# BACKGROUND

From May 1988 through March 1996, plaintiff received social security disability insurance benefits ("DIB").[1] (T. 14, 34). Defendant contends that, during that time, plaintiff was overpaid $14,311.50 due to her return to work.[2] (T. 14, 34). According to defendant, those benefits have allegedly been recovered. (T. 14). In October 1996, plaintiff became re-entitled to DIB and collected payments through July 2004. (T. 14, 34). Defendant claims that plaintiff returned to substantial gainful work in February 2002 resulting in an overpayment of benefits in the amount of $16,607.49. (T. 14, 34).

In August 2004, plaintiff received a letter from the Social Security Administration ("SSA") entitled Notice of Disability Cessation. In that correspondence, the SSA advised plaintiff that due to substantial work, her eligibility payments should have ceased as of May 2002. (T. 18). The notice stated:

> Earlier, we wrote to tell you that we had information about your work and earnings that could affect your Social Security disability payments. We also told you that we planned to decide that your disability ended because of your substantial work. We are now writing to tell you our decision.[3] (T. 18).

The notice explained that plaintiff was paid for her trial work period ("TWP") and her extended period of eligibility ("EPE"). The notice also stated, "we pay benefits for the month disability ends and the following two months no matter how much is earned. In your case, this is February 2002 through April 2002."[4] (T. 18). Plaintiff was advised, "[b]ecause we did not stop

---

[1] The record does not contain any medical evidence or information relating to plaintiff's disability. During the administrative hearing, plaintiff testified that she suffers from encephalitis. (T. 131).

[2] The record contains no documentation relating to overpayments or plaintiff's work activity in that period.

[3] The prior correspondence referenced in the letter is not part of the record herein.

[4] According to the SSA, plaintiff's eligibility ended when she performed work at the substantial gainful activity level in February 2002 earning $11,867.90 or $989 per month.

2

your checks until August 2004, you were paid $17,395.49 too much in benefits". (T. 19). Plaintiff was advised that she could appeal the determination and request a waiver of overpayment. (T. 19).         In September 2004, plaintiff requested that the SSA waive collection of the overpayment. (T. 22).  In January 2005, the SSA denied that request but suggested that plaintiff appear for a personal conference as plaintiff had the right to meet with the agency to discuss the overpayment. (T. 31).   The conference was held on June 23, 2005. (T. 33). In August 2005, plaintiff was advised that the initial decision to deny her request for a waiver was correct. (T. 36).   The notice stated, "[i]t has been determined that you did not exercise a high degree of care in reporting your work". (T. 36).

In October 2005, plaintiff requested a hearing by an Administrative law Judge ("ALJ"). (T. 40).  On September 14, 2006, a representative from District Office 110 prepared a document entitled "Report of Contact" which provided:

> W/E[5] came into D.O. 110 and returned check in the amount of $697 and inquiry as to status of her hearing request of waiver and personal conference denial.  There is nothing pending in ODAR, per query.  As personal conference was denied on 8/8/05 and W/E was into [sic] the office on 10/3/05, we are using that as a protective filing.  Medical folder does not contain any information from the waiver or personal conference, so we will reconstruct, then forward folder to ODAR.[6] (T. 45).

On October 7, 2006, plaintiff prepared a second Request for Waiver of Overpayment which is noted as "Reconstructed".  (T. 64).   On November 3, 2006, a representative from District Office 110 prepared another "Report of Contact" which states:

> We have no record of hearing been filed or personal denial even though W/E requested one on 10/4/05 and came into the office on

---

[5] W/E is an abbreviation for "wage earner".  http://www.acronymfinder.com (last visited December 9, 2011).

[6] ODAR is an acronym for the SSA's Office of Disability Adjudication and Review.  *See id.*

3

>    10/3/05.  We have been unable to locate paperwork from waiver/personal conference denial and have reconstructed it to the best we could.  Original waiver determination was attached to letter sent to W/E on 8/8/05 but she never responded to our requests for a copy.  It appears good cause for late filing exists.  Hearing request being forwarded for your action. (T. 53).

On January 20, 2007, plaintiff prepared a third Request for Waiver of Overpayment.  (T. 83).  On March 16, 2007, an administrative hearing was held.  Plaintiff appeared and elected to proceed *pro se.*  On March 30, 2007, the ALJ issued a decision finding that plaintiff received an overpayment and that plaintiff was not without fault in creating the overpayment. (T. 14).  On June 26, 2009, the Appeals Council denied plaintiff's request for review making the ALJ's determination final. (T. 3).

On August 3, 2009, plaintiff commenced this action *pro se.* (Dkt. No. 1).  On February 24, 2010, defendant filed an answer. (Dkt. No. 11).  On June 15, 2010, plaintiff filed a letter that briefly summarized her arguments.  (Dkt. No. 13).  On July 14, 2010, defendant filed a motion for judgment on the pleadings. (Dkt. No. 14).

## DISCUSSION

### I.   Standard of Review

A Commissioner's determination will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  "The Supreme Court has defined substantial evidence as 'more than a mere scintilla' and as 'such relevant evidence as a reasonable mind might accept as adequate to support

4

a conclusion.'" *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Plaintiff is *pro se* and in the absence of a plaintiff's brief, the Court assumes that the plaintiff generally alleges that the ALJ committed legal error and that his decision was not supported by substantial evidence. *Edel v. Astrue*, 2009 WL 890667, at *15 (N.D.N.Y. 2009) (citations omitted).

## II.   Waiver of Overpayment

"Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made". 42 U.S.C. § 404(a)(1). The Social Security Act provides that an overpayment of benefits shall not be recovered where the claimant is "without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience." *Langella v. Bush*, 161 F. App'x 140, 142 (2d Cir. 2005) (citing 42 U.S.C. § 404(b); 20 C.F.R. § 404.506). Adjustment or recovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses. 20 C.F.R. § 404.508.

In determining a party's "fault" in receiving and accepting an overpayment of benefits, the SSA considers whether the overpayment resulted from:

> (a) An incorrect statement made by the individual that he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information that he knew or should have known to be material; or

5

>  (c)With respect to the overpaid individual only, acceptance of a payment that he either knew or could have been expected to know was incorrect.

*Hannon v. Barnhart*, 134 F. App'x 485, 486 (2d Cir. 2005) (citing 20 C.F.R. § 404.507).  The individual requesting the waiver has the burden of establishing that he is entitled to the waiver. *Id*. at 487.  In determining whether an individual is at fault, the SSA must "consider all pertinent circumstances" which include "the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Beebe v. Astrue*, 2008 WL 5243890, at *3 (E.D.N.Y. 2008) (quoting 20 C.F.R. § 404.507).  "No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983).  Further, "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." *Terwilliger v. Comm'r of Soc. Sec*., 2009 WL 2611267, at *6 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.507); *see also Borodkin v. Barnhart*, 2007 WL 1288602, at *3 (S.D.N.Y. 2007) (fault applies only to the individual).  If the Commissioner's finding that the claimant was not without fault is supported by substantial evidence, there is no need to consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience.  *Langella*, 161 F. App'x at 142.

**III.    ALJ's Finding That Plaintiff Was Not Without Fault**

In Finding #2, the ALJ concluded that plaintiff was not without fault in creating the overpayment.  Plaintiff acknowledged her duty to report her work activity to SSA and does not

6

dispute that she was working while receiving benefits. (T. 83). However, plaintiff claims that she relied upon information provided by SSA representatives. Plaintiff claims that she repeatedly called, visited and wrote to SSA regarding her work activity and that in response, she was advised that she was entitled to benefits "until told otherwise".

"Where an individual . . . accepts [an] overpayment because of reliance on erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under title II or title XVIII of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be 'without fault'". 20 C.F.R. § 404.510a. "[C]redibility is a critical factor in determining whether the claimant was without fault", therefore, the ALJ must state explicitly whether he believed the plaintiff. *Valente v. Sec'y of Health and Human Servs*., 733 F.2d 1037, 1044 (2d Cir. 1984) (citations omitted). An evaluation of fault normally requires "an assessment of the recipient's credibility . . . to distinguish a genuine hard luck story from a fabricated tale." *Schwingel v. Harris*, 631 F.2d 192, 197 (2d Cir. 1980) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 696–97 (1979)). When a plaintiff contends that an overpayment is the result of reliance on erroneous information from the SSA, the ALJ must address the contention and explain whether it is credited or rejected. *Valente*, 733 F.2d at 1044.; *Lieberman v. Shalala*, 878 F.Supp. 678, 681 (S.D.N.Y. 1995) (the plaintiff claimed that she telephoned the SSA concerning her benefits requiring the ALJ to mention § 404.510a and indicate that he considered its potential application in this case).

In the case at hand, plaintiff was aware that her return to work would affect her eligibility but yet continued to collect benefits. The ALJ and plaintiff engaged in the following colloquy during the administrative hearing:

> Q. But the records indicate that you went back to work in 2002?
>
> A. Yes, sir.
>
> Q. Well, there was a period of time that you were receiving benefits and still working. Wasn't there?
>
> A. Yeah, 2002, is when I made too much money. You could work and still collect Social Security Disability, as long as you did not make over a certain amount of dollars. And apparently, in 2002, I overdid it.
>
> Q. Well, then you weren't entitled to the Social Security Disability.
>
> A. Yes. Yes. I admit that. Yes I do. (T. 121)
>
> \*   \*   \*
>
> Q. Is it your testimony this morning, ma'am, that you believed that you were entitled to all of the money that you earned and got your disability benefits also?
>
> A. Not for 2002. I admit being wrong for 2002. I do. And I am willing to pay back that money, which states, on there, my 2002 form. (T. 123).

In Finding #2 of Fact and Conclusions of Law, the ALJ stated:

> A review of the claimant's record revealed that she was frequently overpaid due to her work activity. The claimant is well educated; however, she did not exercise a high degree of care in reporting her work activity. The claimant failed to timely furnish information she knew or should have known to be material and accepted social security benefits that she knew or could have been expected to know were not due. She knew or should have known the substantial gainful activity rules and reporting responsibilities especially given her prior overpayment and capacity to know that an overpayment was being created.

> At the hearing, the claimant admitted that she was wrong in receiving benefits for 2002 but believed she did not earn enough to prevent payments in the years 2003 and 2004. I find that this is not a valid and credible excuse, especially based on her knowledge of her previous overpayment due to work activity.

(T. 14-15).

Based upon a review of the record, the Court finds that the record lacks substantial evidence to support the ALJ's determination. The ALJ erroneously relied upon information that is not contained in the record and failed to address plaintiff's claim that she relied upon information from the SSA. During the administrative hearing, the ALJ referenced a May 2002 SSA evaluation:

> Q. Well, the information that I have states that Social Security evaluated your case in May of 2002. Do you remember that? Did they send you some form that they were going to reevaluate your case?
>
> A. No. I never received anything that they were going to reevaluate my case.
>
> Q. Well, did you receive anything that said that your payments were going to stop?
>
> A. No. (T. 120).

There is no documentation relating to this evaluation in the administrative transcript. Indeed, the first correspondence from the SSA to plaintiff regarding the overpayment is the SSA's Notice of Disability Cessation dated August 6, 2004. The ALJ also referenced and relied upon plaintiff's "previous overpayment due to work activity". There are no documents and/or evidence relating to plaintiff's prior overpayment situation in this administrative record. *See Yankus v. Astrue*, 2008 WL 4190870, at *7 (E.D.N.Y. 2008) (considering that a pamphlet that the plaintiff allegedly received was evidently important to the ALJ's decision-in that it is the sole

9

piece of documentary evidence cited therein, the pamphlet's absence in the Administrative Record was particularly concerning).

The ALJ also failed to address plaintiff's claims that her overpayment was the result of erroneous information from the SSA. The omission is troubling as portions of the record may support plaintiff's claims that she attempted to understand her responsibilities with respect to her benefits. In plaintiff's October 2006 Second Request for a Waiver, plaintiff stated that, "when I called to tell SSA that I was working, they stated that they will let me know when I am no longer entitled to benefits". (T. 64). In plaintiff's Third Request for a Waiver, plaintiff reiterated, "[w]hen I called SSD they told me that until they tell me in writing that I was no longer eligible for benefits" [sic]. (T. 83). Plaintiff further stated that when they finally told her she was not entitled to benefits, they also told her that she was overpaid, yet still continued putting checks in her account. (T. 83). Plaintiff stated that her contact with SSA was, "by person, by phone and in writing". (T. 83). During the hearing plaintiff reiterated her claims:

> Q. You're an educated lady. Was it your thought that you would continue to draw disability benefits and still work?
>
> A. I went - - I have gone down there. I have called them numerous times, and they stated to me that it was still party of my trial work period, because they give you an extended 36-month [sic]. I'm like, what? I said, okay. They said until I get a letter stating that they - - I am no longer eligible for Social Security Disability is when to worry about it.
>
> Q. When did you get that - - such a letter?
>
> A. 2004.
>
> Q. All right . . . I have a letter here that's marked as Exhibit B-2, that's dated August 6, 2004. Is that the letter that you're talking about?
>
> A. Yeah. I know that I - - I even called them and told them to make sure that they stop my benefits. (T. 120).

10

Plaintiff testified that she telephoned the Social Security Office to report her income but could not remember when and made no record of those telephone calls. (T. 122). She provided the "800" number and testified, "every now and then" she visited the local office in her area. (T. 122-23).

Despite the foregoing, the ALJ did not address plaintiff's claims regarding her contact with SSA. The ALJ failed to cite to §404.510a and did not properly analyze plaintiff's credibility in this regard. Credibility is squarely at issue in cases, such as this, where plaintiff's fault is the deciding factor. While the ALJ addressed plaintiff's credibility, the ALJ confined this portion of his analysis to plaintiff's claims that she believed she did not earn enough in 2003 and 2004. As this Court previously noted, this analysis is flawed because it is based upon facts not contained in the record. The ALJ did not assess plaintiff's credibility in relation to her claims that she was told that she was entitled to benefits until she heard otherwise. While the ALJ may have discredited plaintiff's credibility in this regard, he must explicitly discuss this factor in his determination. *Ming v. Astrue*, 2009 WL 2495947, at *6 (E.D.N.Y. 2009) . A "selective discussion without mention of plaintiff's attempts to contact SSA and alleged telephone conversations with SSA representatives demonstrates that the ALJ failed to properly consider or reject plaintiff's claim of reliance on misinformation". *See Litvin v. Astrue,* 2011 WL 4834138, at *10 (S.D.N.Y. 2011). Due to the flaws in the credibility analysis, the Court is constrained to determine whether, as a matter of law, the decision is supported by substantial evidence.

Moreover, as plaintiff is *pro se*, the Court also finds that the ALJ failed to sufficiently develop the record. The record contains some information relating to plaintiff's telephone conversations and visits with SSA representatives. As the record suggests, plaintiff appeared at District Office 110 on more than one occasion and the various "Reports of Contact" contain

11

signatures of representatives who spoke with plaintiff. (T. 45, 53). The record also contains a July 9, 2003 "report of contact" prepared by "L. Rotundo" documenting a telephone call to plaintiff. (T. 16-17). The conversation involved plaintiff's work activity and plaintiff advised that she did not work in the last quarter of 2002 and further that she made less than what the SSA had posted. (T. 17). With this information, the ALJ should have attempted to develop the record further.

To summarize, the ALJ's decision relating to plaintiff's fault is flawed in the following respects: (1) the ALJ relied upon evidence not contained in the record; (2) the ALJ failed to make the appropriate findings regarding plaintiff's credibility; and (3) the ALJ failed to analyze portions of the transcript that may support plaintiff's allegations; and (4) the ALJ failed to adequately develop the record. The aforementioned are grounds for remand. *See Yankus*, 2008 WL 4190870, at *6 (where the ALJ fails to fully develop the record in accordance with the Second Circuit's mandate for *pro se* claimants, the Court cannot determine, as a matter of law, whether substantial evidence supports the ALJ's findings). Accordingly, the matter is remanded so that the ALJ may resolve issues relating to plaintiff's fault with substantial evidence and to consider the applicability of § 404.1510a. In this regard, the ALJ must consider plaintiff's contentions that she was repeatedly advised by the SSA that she was entitled to the benefits she was receiving until she was told otherwise. "Although the ALJ is not obligated to credit plaintiff's contention, it is incumbent on him, at the very least, to address the contention and to explain why it either is or is not persuasive." *Litvin*, 2011 WL 4834138, at *11.[7]

## IV.     Amount of Overpayment

---

[7] The ALJ did not address the second requirement for wavier of overpayment, "equity and good conscience". On remand, if the ALJ determines that plaintiff was without fault, the ALJ must consider whether recovery of overpayments would defeat the purpose of Title II.

12

Plaintiff also challenges the ALJ's finding regarding the amount of the overpayment. Plaintiff initially questioned the SSA's calculations in her January 2007 Request for a Waiver and reiterated her objection during the administrative hearing. (T. 85). Plaintiff claims that she was in college from March 2000 until August 2001 and that she was not able to find a job until the beginning of 2002. Thus, plaintiff contends that the SSA determination that she was entitled to extended work period benefits for 36 months beginning in May 1998 through April 2001 was incorrect as she was not gainfully employed during that time. (Dkt. No. 13). Defendant does not respond to this contention.

"A claimant is not 'disabled' for purposes of the Social Security Act if she is capable of substantial gainful activity, regardless of her medical condition." *Ming*, 2009 WL 2495947, at *4 (citing 20 C.F.R. § 404.1520(a)(4)(i). A trial work period of nine months (not necessarily consecutive) is given, whereby substantial gainful activity will not result in the cessation of benefits. *Id*. (citing 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592). A claimant may also be given a "reentitlement period," which is a thirty-six month period of extended eligibility during which, the SSA will pay a claimant only for months where they could not perform substantial gainful activity. *Id*. (citing 20 C.F.R. § 404.1592a(a)). This period begins "with the first month following completion of 9 months of trial work" and ends on either the "month before the first month in which your impairment no longer exists or is not medically disabling" or "[t]he last day of the 36th month following the end of your trial work period." *Id*. (citing 20 C.F.R. § 404.1592a(b)).

Although the Social Security Act does not indicate who bears the burden of establishing the fact of overpayment, some circuits have held that when a claimant challenges the SSA's initial determination of the amount that she was overpaid, the Commissioner must present substantial, reliable evidence of the particular overpayments. *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th

13

Cir. 2000); *Pennerman v. Apfel*, 2001 WL 527398, at *3 (E.D.N.Y. 2001) (adopting the *McCarthy* reasoning). The production of an initial determination letter from SSA to plaintiff, standing alone, does not constitute substantial evidence of the amount of the overpayments. *McCarthy*, 221 F.3d at 1126 (the district court erroneously relied upon a letter from SSA to the plaintiff which was the only document in the record that identified specific payments). Evidence of overpayment may include canceled checks, bank records or a plaintiff's own admission that she received the claimed amounts. *Id*.

>   Here, the ALJ found, in pertinent part:
>
>> The claimant became re-entitled to social security disability benefits in October 1996 and again returned to work performing substantial gainful activity in February, 2002. The claimant continued to receive social security disability benefits while working until July, 2004 which created an overpayment of $16,607.49. (T. 14).

The ALJ did not refer to any portion the record or evidence to support the determination. Upon review, the Court finds inconsistencies in the record regarding the amount of overpayment and thus, the Court is unable to determine whether the ALJ's conclusion is supported by substantial evidence. In the August 2004 Notice of Disability Cessation, the SSA claimed that plaintiff was overpaid $17,395.49. However, the SSA's "Overpayment Summary" dated March 8, 2007 lists plaintiff's balance owed as $14,607.49. (T. 108). Moreover, during the administrative hearing, the ALJ stated that plaintiff's overpayment, "amounted to $14,600 and something dollars". (T. 121). Despite the contradictory information, the ALJ inexplicably determined that the overpayment amount was $16,607.49. Consequently, plaintiff is entitled to a remand for recalculation of the overpayment. *Howard v. Astrue*, 2007 WL 4326788,at * 4 (E.D.N.Y. 2007). On remand, the Commissioner bears the burden of establishing, by substantial evidence, the amount of overpayment.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the ALJ's decision be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: January 4, 2012
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge